*283
 
 OPINION OF THE COURT
 

 Levine, J.
 

 In this action for declaratory judgment we are asked to determine whether plaintiffs have stated a cause of action in their pleadings and supporting papers in which they seek a declaration that New York’s system for financing its public elementary and secondary schools is unconstitutional.
 

 Plaintiffs, Reform Educational Financing Inequities Today (R.E.F.I.T.), a not-for-profit membership organization suing on behalf of itself and 40 member school districts, the Boards of Education of 21 Long Island school districts participating individually, individual taxpayers, parents, and public school students residing in participating school districts, allege in their complaint that the statutory scheme by which New York finances its public schools violates the Education Article of the New York Constitution (art XI, § 1), and the Equal Protection Clauses of the Federal and State Constitutions.
 
 *
 
 Supreme Court dismissed plaintiff’s complaint for failure to state a cause of action (152 Misc 2d 714), and the Appellate Division modified, on the law, by adding a provision to the Supreme Court judgment declaring New York’s school financing scheme constitutional and, as so modified, affirmed (199 AD2d 488). We agree with the courts below.
 

 Our State Constitution requires that "[t]he legislature shall provide for maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (art XI, § 1). In
 
 Board of Educ., Levittown Union Free School Dish v Nyquist
 
 (57 NY2d 27) (hereinafter
 
 Levittown),
 
 this Court held that this constitutional provision does not mandate that all educational facilities and services be substantially equal throughout the State. Rather, article XI, § 1 was intended to require the Legislature to provide a State system of free schools availing all of the State’s children of a "sound basic education”
 
 (id.,
 
 at 48).
 

 Plaintiffs in this action do not claim that students in their district are receiving something less than a sound basic education. Rather, their pleadings and supporting papers demonstrate that there now exists a greater disparity in the amount of money spent per pupil in property-poor as compared to property-rich school districts than the disparity in existence at
 
 *284
 
 the time
 
 Levittown
 
 was decided. Plaintiffs now claim that this disparity demonstrates a gross and glaring inadequacy in the State’s school financing scheme, and that this showing of great disparity calls into question the constitutionality of the financing scheme.
 

 Plaintiffs’ argument rests on their assertion that
 
 Levittown
 
 left the door open for a challenge to the constitutionality of the educational financing structure on the basis of gross and glaring inadequacy in the funding of education and that such inadequacy can be demonstrated by extreme disparities in funding. However, even a claim of extreme disparity cannot demonstrate the "gross and glaring inadequacy”
 
 (id.,
 
 at 48) we referred to in
 
 Levittown.
 

 The Education Article does not by its express terms contain an egalitarian
 
 component. Nor
 
 does a study of the history of the Article reveal an intent to preclude disparities in the funding for education or in relative educational opportunities among the State’s school districts. Instead, "the evident purpose of [the Education Article] was to deprive the legislature of discretion in relation to the establishment and maintenance of common schools, and to impose on that body the absolute duty to provide a general system of common schools” (3 Lincoln, Constitutional History of New York, at 554). Thus, the primary aim of the legislation was to constitutionalize the established system of common schools rather than to alter its substance
 
 (see, e.g.,
 
 Report of Comm on Education and Funds Pertaining Thereto, 2 Documents of NY Constitutional Convention of 1894, Doc No. 62, at 3;
 
 Judd v Board of Educ.,
 
 278 NY 200, 210). That system consisted of 11,778 local school districts with varying amounts of property wealth which offered significantly disparate educational opportunities (Fortieth Ann Report of State Superintendent of Public Instruction, 6 NY Assembly Documents of 1894, Doc No. 42, at 76-83, 88-95). Clearly, equal educational opportunity was not the intended result of the amendment — an adequate education was. Thus, it was anticipated that the amendment would only affect places in the State where the common schools were not adequate (3 Revised Record at Constitutional Convention of 1894, at 695).
 

 Therefore, even accepting plaintiffs’ allegations of gross disparities between the amount of money spent on students in property-poor school districts and property-rich school districts, their cause of action based on a violation of the Educa
 
 *285
 
 tian Article due to such disparities cannot survive this motion to dismiss. Giving plaintiffs’ submissions the benefit of every favorable inference, they simply do not state a claim that these disparities have caused students in the poorer districts to receive less than a sound basic education, which is all that they are guaranteed by our Constitution. Accordingly, the order of the Appellate Division, insofar as it affirmed dismissal of the cause of action based on the Education Article of our State Constitution, should be affirmed, without prejudice, however, to the plaintiffs, if so advised, to apply at the trial court for leave to amend the complaint (CPLR 3211 [e];
 
 see, People v New York City Tr. Auth.,
 
 59 NY2d 343, 350).
 

 Moreover, neither in their pleadings and other submissions on this motion to dismiss, nor in their argument before this Court have plaintiffs advanced a legal or factual basis for us to overrule
 
 Levittowris
 
 equal protection analysis under the State and Federal Constitutions. In
 
 Levittown
 
 and again in
 
 Campaign for Fiscal Equity v State of New York
 
 (86 NY2d 307 [decided today]), we have made clear that the State educational financing system will be upheld if it is supported by a rational basis. The desire to provide local control of education provides such basis. As plaintiff’s other equal protection arguments are dependent upon this Court adopting a more exacting standard, those equal protection challenges must also fail.
 

 Finally, rather than affirm the Appellate Division’s broad and definitive declaration of the constitutionality of the State educational financing system, we modify to declare that the school financing scheme of the State of New York has not been shown in this case to be unconstitutional
 
 (see, Campaign for Fiscal Equity v State of New York, supra).
 

 Accordingly, the order of the Appellate Division should be modified, with costs to defendants, in accordance with the opinion herein and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Ciparick concur; Judge Smith concurring only in result.
 

 Order modified, etc.
 

 *
 

 Unlike in
 
 City of New York v State of New York
 
 (86 NY2d 286 [decided today]), the defendants have not raised lack of capacity to sue as a defense. Thus we do not reach that issue.