Levine, J.
(concurring). I join with the majority of this Court in holding that plaintiffs have failed to allege legally sufficient causes of action under the Equal Protection Clauses of the Federal and State Constitutions or under title VI of the Civil Rights Act of 1964, but have pleaded a valid cause of *325 action under the United States Department of Education’s regulations implementing title VI. I am also of the view that, under our prevailing liberal pleading standards, the complaint states a cause of action based upon a violation of the Education Article of the State Constitution (NY Const, art XI, § 1). The complaint invokes the definition of the State’s educational duty under the Constitution set forth in Board of Educ., Levittown Union Free School Dist. v Nyquist (57 NY2d 27) (hereinafter Levittown) and alleges that the State’s public school financing scheme denies them a "sound basic education” with "minimal acceptable facilities and services” (id., at 47-48). The complaint also refers to various specific educational deficiencies and alleges that the State’s funding scheme denies New York City public school students the opportunity to achieve even basic literacy. These allegations, in my view, are sufficient to withstand the motion to dismiss, despite the inclusion and heavy reliance upon various other factors which I consider essentially irrelevant to a determination of whether the current State school aid formula violates the Education Article of the State Constitution.
I write separately regarding plaintiffs Education Article claim because the constitutional standard for a sound basic education articulated by the majority may be read to extend the State’s funding obligation well beyond that envisaged by the Levittown Court or justified by the language or history of the adoption of the Education Article.
I.
Before addressing the errors and deficiencies I perceive in the majority’s opinion upholding the sufficiency of plaintiffs’ Education Article cause of action, I wish to explain why I am unable to agree with Judge Simons’ dissent in this case, although I find much merit in its discussion of the extent of the State’s constitutional responsibility for funding the State’s public education system and of the inherent limitations of courts in making constitutional decisions on educational quality and quantity. That dissent concludes that it "is for other branches of government, not the courts, to define what constitutes a sound basic education” (Simons, J., dissenting in part opn, at 333). It also finds plaintiffs’ Education Article cause of action deficient because their "claim [of a denial of a sound basic education] does not attempt to establish deprivation State-wide; it advances only claims involving some New York *326 City schools”. (Simons, J., dissenting in part opn, at 338.) The dissent apparently concludes that the State’s mandate to support the system of education is only breached upon proof of a State-wide failure of the system of public education, but not a failure (attributable to inadequate State funding) in any individual school district. I believe this position is inconsistent with the Levittown decision.
In Levittown we explicitly stated that the Education Article (NY Const, art XI, § 1) of the Constitution does require the Legislature to put in place and support "a State-wide system assuring minimal acceptable facilities and services”, although not necessarily "a system assuring that all educational facilities and services would be equal throughout the State.” (57 NY2d, at 47, supra [emphasis supplied].) We further defined the "constitutional mandate” as that of providing a "sound basic education” (id., at 48).
This Court in Levittown viewed from an historical perspective the funding role and responsibility of the State in the constitutional scheme contemplated when article XI, § 1 was adopted. We expressly relied upon the historical description, contained in the amicus brief of 85 local school districts, that there has been in this State a nearly 200-year tradition of a dual system of financing public education, already well in place when the Education Article was adopted in 1894, giving local school districts broad autonomy in making policy decisions on the quality and quantity of education and the funding thereof for their respective schools (see, id., at 46). We described the State’s funding responsibility under the 1894 constitutional scheme as one of "assuring that a basic education will be provided [through State financial aid to local school districts]” (id., at 45 [emphasis supplied]).
These observations were historically accurate and are reflected in the history of the adoption of the Education Article. As early as 1795, the Legislature enacted a common school law providing for State aid to counties and cities to support their local schools, contingent upon matching funds raised by local taxation but not otherwise limiting local school educational expenditures; similar legislation was passed in 1812 (see, 3 Lincoln, The Constitutional History of New York, at 526-527). As we have discussed more extensively in Reform Educ. Fin. Inequities Today v Cuomo (86 NY2d 279 [decided today]), the primary purpose of article XI, § 1 was to "constitutionalize the established system of common schools rather *327 than to alter its substance” (86 NY2d, at 284). Moreover, the constitutional history of the Education Article shows that the objective was to "make[ ] it imperative on the State to provide adequate free common schools for the education of all of the children of the State” and that the new provision would have an impact upon "places in the State of New York where the common schools are not adequate” (3 Revised Record of Constitutional Convention of 1894, at 695 [emphasis supplied]).
In my view, the dissent’s conclusions that the determination of what constitutes a sound basic education for constitutional purposes is not a judicial responsibility on this constitutional challenge, and that, in any event, only a State-wide failure to provide funding for a sound basic education will give rise to a constitutional violation, are inconsistent with Levittown’s description of the State’s funding responsibility and with the constitutional history I have cited. The Levittown record definitely established, and the courts at all levels recognized that the State’s educational aid formula produced significant variations in aggregate per pupil State aid among the various school districts (see, e.g., Levittown, 94 Misc 2d 466, 502). Also established in Levittown and found by the trial court was that the cost of the same educational services, resources or facilities varied substantially throughout the State (see, id., at 503-510). If, because of such factors or others, the State aid to an individual school district proved to be insufficient to "assure minimal adequate facilities and services” (57 NY2d, at 47, supra) or "to assur[e] that a basic education will be provided” (id., at 45), our Levittown decision certainly would lead to the conclusion that the State’s constitutional educational funding responsibility, couched in those very terms, would have been violated in that school district. Moreover, the notion that only a State-wide failure to provide sufficient State funds for a basic sound education is sufficient to establish a right to relief under the Education Article is inconsistent with the constitutional debate I have previously quoted, in which it was specifically anticipated that its adoption would have an ameliorative effect upon "places * * * where the common schools are not adequate” (see, supra).
Thus, I conclude that we cannot avoid addressing the meaning and content of the constitutional mandate identified in Levittown, that the Legislature must support a public school system providing an opportunity for students to receive a sound basic education.
*328 II.
I now turn to a discussion of the serious errors I find in the majority’s opinion addressing the meaning and content of that constitutional mandate, to provide school children an opportunity for a sound basic education. Analysis may profitably begin by identifying what the Levittown Court most clearly rejected as the constitutional mandate under the Education Article. Contrary to the conclusion of the majority here, the Court in Levittown not only had before it the contention that disparities in overall funding and quality of education among local school districts violated the Education Article. The Court also undisputably had before it the claim, supported by findings of fact and conclusions of law by the lower courts, that, irrespective of the existence of disparities, the school children in the plaintiff and intervenor school districts in that case were not receiving the educational opportunities guaranteed by the Education Article. Thus, without reference to disparity, the trial court adopted as the constitutional mandate in New York the construction of a comparable constitutional provision on public education by the New Jersey Supreme Court in Robinson v Cahill (62 NJ 473, 515, 303 AD2d 273) (Levittown, 94 Misc 2d, at 533, supra):
" 'The Constitution’s guarantee must be understood to embrace that educational opportunity which is needed in the contemporary setting to equip a child for his role as a citizen and as a competitor in the labor market’.”
The trial court paraphrased that concept of the constitutional obligation as requiring the State to afford all school children the opportunity to acquire those skills "necessary to function as a citizen in a democratic society” (id.), and found that the constitutional responsibility of the State was breached by the State’s inadequate funding aid to the large city school districts in the State (id., at 534).
When the Levittown case reached the Appellate Division, the majority in that Court adopted the same approach in defining the basic education guaranteed by article XI, § 1. It quoted (83 AD2d 217, 249) from Seattle School Dist. No. 1 v Washington (90 Wash 2d 476, 517, 585 P2d 71) that the educational opportunities which are constitutionally required to be furnished are those " 'in the contemporary setting to equip our children for their role as citizens and as potential competitors in today’s market as well as in the marketplace of *329 ideas’ The Appellate Division concluded that "we believe section 1 of article XI of the New York Constitution requires no less” (83 AD2d, at 249, supra). The Appellate Division majority found that the then-current State funding scheme violated the Education Article in failing to provide children in the school districts represented there with the skills required thus "to function in society” (83 AD2d, at 251, supra).
The majority of this Court in Levittown was also directly confronted with the position of the sole dissenter, Judge Fuchsberg, that under the State Constitution, all children "are entitled to an education that prepares today’s students to face the world of today and tomorrow.” (57 NY2d, at 60, supra.) The dissent also reminded the majority that both lower courts found as a fact that the State’s funding scheme denied such educational opportunities for the children in the districts involved in the Levittown suit. "Those who took and tolled the testimony tell us that, by any standard that counts, for the multitudinous many no such educational opportunity truly exists.” (Id.)
Despite those findings by the lower courts in Levittown, that the children in the subject school districts in that suit were denied the opportunity "to acquire the skills necessary to function as a citizen in a democratic society” (94 Misc 2d, at 533, supra) or the skills "to function effectively in society” or prepare them for " 'their role as citizens and as potential competitors in today’s market place’ ” (83 AD2d, at 248-249, supra), this Court held, as a matter of law, that the plaintiffs and intervenors in Levittown had not established (indeed, not even claimed) that the State’s public education funding scheme failed to provide the educational opportunity mandated by article XI, § 1, i.e., minimal facilities and services needed for a sound basic education.
The conclusion seems to me inescapable that, if we are to faithfully follow the Levittown precedent, the concept of a sound basic education as a constitutional mandate is much more circumscribed than the aspirational, largely subjective standards expressed by the lower courts and the dissent in Levittown, representing what typically one would desire as the outcome of an entire public education process — to produce useful, functioning citizens in a modern society or, as Judge Fuchsberg put it, preparation of students "to face the world of today and tomorrow”.
Thus, in my view, the majority unmistakably and unwisely *330 departs from Levittown in the majority’s principal holding here that the sound basic education which is the State’s funding responsibility under the Education Article includes imparting these skills "necessary to enable children to eventually function productively as civic participants” (majority opn, at 316 [emphasis supplied]). In substance and meaning, this objectively unverifiable standard is indistinguishable from the criteria for the constitutional norm expressed by the trial court and Appellate Division in Levittown. The majority’s error is further compounded and reinforced by the majority’s reference to plaintiffs’ allegations, which the majority apparently considers relevant on plaintiffs’ cause of action under the Education Article, that New York City students are being deprived of the opportunity, among other things, to "be knowledgeable about political, economic and social institutions and procedures in this country and abroad” (majority opn, at 319).
Having demonstrably rejected similar standards, the manifest teaching of Levittown is that the State’s constitutional educational funding responsibility does not nearly extend to guaranteeing students the opportunity to acquire those skills to "function productively as civic participants”, as the majority would have it. The narrower State role, as the Levittown decision explains, flows necessarily from New York’s historical tradition of dividing responsibility over public education between the State and local school governments, under which the quality of public education necessary to enable students to "function in society” is largely a matter of local decision and control subject to standards and assistance from the appropriate State executive, legislative and administrative bodies (see, Levittown, 57 NY2d, at 45-46, supra). As previously pointed out, that division of responsibility was constitutionalized in the adoption of article XI, § 1.
That this Court in Levittown construed the Constitution as imposing only a drastically limited State funding responsibility for guaranteeing the quality of public school education also stems from the Levittown majority’s awareness of the inherent and proper limitations of the courts in enforcing the constitutional obligation. The Levittown decision cogently pointed to the "enormous practical and political complexity” (57 NY2d, at 38, supra) of deciding upon educational objectives and providing funding for them which, under our form of government, are legislative and executive prerogatives upon which courts should be especially hesitant to intrude (id., at 39; see also, id., at 49, n 9). Again, the majority here disre *331 gords the prudent and jurisprudential advice of Levittown and appears ready to fully enter this arena in delineating a series of "essentials” to which "[c]hildren are entitled” under the Constitution, including such things as "minimally adequate teaching of reasonably up-to-date curricula” on a wide variety of subjects, "reasonably current textbooks” and "minimally adequate” educational physical plant and equipment (majority opn, at 317). Presumably the determination of the adequacy of all such educational resources will be made by the Trial Judge in this case.
The true, far more limited nature of the State’s constitutional responsibility to fund a sound basic education can be gleaned, again, from the language of the Education Article itself and the Levittown opinion. As is well explained in Judge Simons’ dissent, article XI, § 1 does not explicitly designate a State responsibility regarding any minimum quality of education. It expressly imposes only the duty upon the Legislature to "provide for the maintenance and support of a system” of free public education (NY Const, art XI, § 1 [emphasis supplied]). The Levittown Court emphasized that the constitutional mandate is solely to maintain a system of education (57 NY2d, at 48, n 7). The Court observed that, concededly, a system of public schools did exist in the State through legislation and regulation and appropriations for maintenance of various State-wide minimum educational standards, etc. (id., at 48). The Court then identified the only remaining element of the State’s constitutional responsibility under article XI, §1:
"If what is made available by this system * * '* may properly be said to constitute an education, the constitutional mandate is satisfied.” (Id. [emphasis supplied].)
Thus, the sound basic education envisaged by the Levittown Court as a constitutional mandate subsume those minimal categories of instruction without which whatever the system provides cannot "be said to constitute an education”. Historically and traditionally, the essential, universally recognized as indispensable elements, the sine qua non, of what legitimately might be called an education are the basic literacy (reading and writing) and computational skills and, in a public educational system, citizenship awareness. A public educational system failing to provide the opportunity to acquire those basic skills would not be worthy of that appellation.
*332 Of course, almost all of us would hope for, expect and support as voters and taxpayers funding of a system of public education in this State which offers more than those basics in all school districts, including the furnishing of many of those resources and subjects of instruction plaintiffs claim to be constitutionally mandated and those which, regretably, may be implied as required from the majority’s interpretation of the Education Article. But Levittown held that decisions regarding such concededly worthwhile educational supplements, including the selection thereof and the level of such funding, is to be determined in other forums than by judicial fiat in interpreting the State Constitution. Levittown cannot fairly be interpreted as mandating more than the provision of a system in which all children in the State are given an opportunity to acquire basic literacy, computational skills and knowledge of citizenship as the elements of a sound basic education. Deficiencies beyond those basics were certainly established in the Levittown record, and were found to exist by both lower courts in that case. Yet this Court in Levittown not only found no deprivation of a sound basic education had been proven, it found none had been claimed.
The majority’s significantly less precise or exacting standard for the sound basic education constitutionally required to be provided invites and inevitably will entail the subjective, unverifiable educational policy making by Judges, unreviewable on any principled basis, which was anathema to the Levittown Court.
As I have previously discussed, however, the complaint can be read as alleging that the State’s funding scheme denies New York City school pupils the opportunity to acquire the basic literacy and mathematical skills. I, therefore, vote with the majority that plaintiffs’ cause of action under the Education Article of the State Constitution is legally sufficient.