[735 NYS2d 337]

AMBER PAYNTER, by Her Parent and Natural Guardian, MONA STONE, et al., on Behalf of Themselves and All Others Similarly Situated, Appellants-Respondents, v STATE OF NEW YORK et al., Respondents-Appellants, and AVON CENTRAL SCHOOLS et al., Respondents.

Fourth Department, December 21, 2001

### APPEARANCES OF COUNSEL

*Trevett Lenweaver & Salzer, P. C.,* Rochester (*James C. Gocker* of counsel), for Amber Paynter, plaintiff-appellant-respondent.

*Eliot Spitzer, Attorney General,* Rochester (*Jane Ann Conrad* of counsel), for State of New York, defendant-respondent-appellant.

*Harter Secrest & Emery,* Buffalo (*Carol E. Heckman* of counsel), for Rochester City School District, respondent.

*Harris Beach, L. L. P.,* Rochester (*Daniel J. Moore* of counsel), for Avon Central Schools, respondent.

*Lacy Katzen Ryen Mittleman,* Rochester (*Richard Glen Curtis* of counsel), for Byron-Bergen Central School District, respondent.

*Bruce H. Schneider*, New York City, for NAACP Legal Defense and Educational and another, intervenors-respondents.

**OPINION OF THE COURT**

WISNER, J.

Plaintiffs commenced this action, individually and on behalf of other students in the Rochester City School District (RCSD), alleging that they are being deprived of a sound basic education by a system of public education that results in the concentration of poor and minority students within RCSD. Although we are sympathetic to the efforts of the parents of these students to secure the best education possible for their children, we nevertheless conclude, for the reasons that follow, that the second amended complaint should be dismissed in its entirety.

I

Plaintiffs, who are 15 students in RCSD, commenced this nominal class action on behalf of the 37,000 students in RCSD against, *inter alia*, defendants State of New York, the Regents of the University of the State of New York and their Chancellor, and the New York State Education Department and its Commissioner (collectively, State), asserting causes of action under the Education Article of the NY Constitution ([Education Article] NY Const, art XI, § 1) and the Equal Protection Clause of the NY Constitution (NY Const, art I, § 11). In addition, they assert a cause of action alleging, *inter alia*, an intentional discrimination claim under title VI of the Civil Rights Act of 1964 ([title VI] 42 USC § 2000d), a disparate impact claim under regulations implementing title VI (34 CFR 100.3 [b] [2]), and a 42 USC § 1983 claim for violation of those regulations. They seek declaratory and injunctive relief to "enjoin [the State] to provide" them "a sound basic education;" "educational opportunities equal to those provided to students in the other Monroe County school districts;" "education in a racially diverse environment that is not marked by high concentrations of poverty;" and "an educational system that does not impose a racially disparate impact."

Because of a previous order of this Court, the second amended complaint names RCSD as well as neighboring suburban school districts as defendants (*Paynter v State of New York*, 270 AD2d 819). Those parties were joined pursuant to CPLR 1001 (a) because this action threatens "the[ir] very existence * * * as they are presently constituted, administered

and funded" (*Paynter v State of New York, supra*, at 820). There are, however, no allegations of wrongdoing on the part of the individual school districts.

Supreme Court granted the motion of the individual school districts seeking dismissal of the second amended complaint against them. In addition, the court granted in part the motion of the State seeking dismissal of the second amended complaint against the State, dismissing the first cause of action under the Education Article; the second cause of action except for an intentional discrimination claim; the third cause of action in its entirety; and the fourth cause of action except for an intentional discrimination claim under title VI, a disparate impact claim under regulations implementing title VI (34 CFR 100.3 [b] [2]) and a 42 USC § 1983 claim for violation of those regulations. Plaintiffs appeal, and the State cross-appeals.

The issues before us concern the first and fourth causes of action only. Plaintiffs have not briefed any issues with respect to the second or third causes of action, and thus their appeal with respect to those causes of action is deemed abandoned (*see, Ciesinski v Town of Aurora*, 202 AD2d 984). The State contends, for several reasons, that the court erred in failing to dismiss the second and fourth causes of action in their entirety. With respect to the second cause of action, plaintiffs do not refute the State's contention that it should be dismissed in its entirety. With respect to the fourth cause of action, the State cites *Alexander v Sandoval* (532 US 275), which holds that a private cause of action does not lie to enforce disparate impact regulations implementing title VI. Plaintiffs contend in response that *Alexander* does not call into question the validity of a 42 USC § 1983 action based on a violation of the regulations implementing title VI and thus they may assert a civil rights claim under the fourth cause of action based on an alleged violation of 34 CFR 100.3 (b) (2). The State further contends that, in light of our decision in *Paynter v State of New York* (*supra*), the court erred in dismissing the second amended complaint against the individual school districts.

Thus, there are three issues before us: first, whether the first cause of action under the Education Article is viable; second, whether the 42 USC § 1983 claim asserted in the fourth cause of action is viable; and third, whether the court properly dismissed the second amended complaint against the individual school districts.

## II. First Cause of Action under the Education Article

 Pursuant to the Education Article, which was adopted in 1894, "[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated" (1894 NY Const, art IX, § 1, now NY Const, art XI, § 1). When that article was adopted, there was a State-wide system of "common schools" already in existence. That system was established in 1812 under the supervision of the State Superintendent of Instruction and was supported by funds provided by local taxation and by the State (*see, Judd v Board of Educ.*, 278 NY 200, 206-207, *rearg denied* 278 NY 712). By 1894, there were 11,778 local school districts (*see, Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo*, 86 NY2d 279, 284), each of which was required by State law to provide a free education "to all persons over five and under twenty-one years of age residing in the district" (L 1881, ch 528, § 3). The purpose of the Education Article was to "constitutionalize [this] established system of common schools rather than to alter its substance" (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 284), thereby depriving "the legislature of discretion in relation to the establishment and maintenance of common schools" (3 Lincoln, Constitutional History of New York, at 554). It placed upon the Legislature the burden of "assuring minimal acceptable facilities and services" (*Board of Educ. v Nyquist*, 57 NY2d 27, 47, *appeal dismissed* 459 US 1139), and "it was anticipated that the amendment would only affect places in the State where the common schools were not adequate" (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 284).

*Nyquist, R.E.F.I.T.* and *Campaign for Fiscal Equity v State of New York* (86 NY2d 307) are seminal cases construing this constitutional mandate. In *Nyquist*, the plaintiffs challenged the State's system for financing public schools, contending that it results in disparities in funding, and thus disparities in educational opportunities, in violation of the constitutional mandate set forth in the Education Article. The Court of Appeals found that constitutional challenge lacking, however, because plaintiffs advanced no claim that funding inequities had resulted in the deprivation of minimally acceptable educational facilities and services (*see, Board of Educ. v Nyquist, supra,* at 38, 47-48). The Court rejected the plaintiffs' contention that the Education Article was intended to assure "that all educational facilities and services would be equal throughout the State" (*Board of Educ. v Nyquist, supra,* at 47),

and held that the article mandates only that the Legislature provide the minimal facilities and services needed for a sound basic education (*see, Board of Educ. v Nyquist, supra,* at 47-48). Noting that in this State the average per pupil expenditure exceeds that in all other States but two, the Court stated that it would not interfere with the Legislature's allocation of public funds in the absence of "gross and glaring inadequacy * * * in consequence of the present school financing system" (*Board of Educ. v Nyquist, supra,* at 48-49).

The plaintiffs in *R.E.F.I.T.* also challenged funding inequities, except that the funding disparities cited in that case were greater than those in *Nyquist* (*see, Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 283-284). The Court of Appeals held that "even a claim of extreme disparity [in funding] cannot demonstrate the 'gross and glaring inadequacy' [referred to in *Nyquist*]" (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 284) and that, in the absence of an allegation that the "disparities [in funding] have caused students in the poorer districts to receive less than a sound basic education," the plaintiffs failed to state a viable claim under the Education Article (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 285).

The plaintiffs in *Campaign for Fiscal Equity* challenged the appropriation and allocation of State aid to public schools in the City of New York. Unlike the plaintiffs in *Nyquist* or *R.E.F.I.T.,* however, they alleged that, because of inadequate funding, minimally acceptable educational services and facilities were not being provided and thus students were being denied the opportunity for a sound basic education (*see, Campaign for Fiscal Equity v State of New York, supra,* at 315-316). The Court of Appeals held that they stated a viable cause of action under the Education Article[1] (*see, Campaign for Fiscal Equity v State of New York, supra,* at 319). In so holding, the Court indicated that a sound basic education "should consist of the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury" and that "[i]f the physical facilities and pedagogical services * * * are adequate to provide children with the opportunity to obtain these essential skills, the State will have satisfied its constitutional obligation" (*Campaign for Fiscal Equity v State of New*

---

1. Recently, Supreme Court (DeGrasse, J.) ruled in favor of the *Campaign For Fiscal Equity* plaintiffs after seven months of trial (*Campaign for Fiscal Equity v State of New York,* 187 Misc 2d 1).

*York, supra,* at 316). The Court made clear that, under the Education Article,

> "[c]hildren are entitled to minimally adequate physical facilities and classrooms which provide enough light, space, heat, and air to permit children to learn. Children should have access to minimally adequate instrumentalities of learning such as desks, chairs, pencils, and reasonably current textbooks. Children are also entitled to minimally adequate teaching of reasonably up-to-date basic curricula such as reading, writing, mathematics, science, and social studies, by sufficient personnel adequately trained to teach those subject areas" (*Campaign for Fiscal Equity v State of New York, supra,* at 317).

Here, plaintiffs assert a cause of action under the Education Article on behalf of the students in RCSD. Unlike the plaintiffs in previous cases, however, they do not challenge the sufficiency of State funding or the adequacy of the educational services and facilities being provided. Rather, their focus is on the "wholesale academic failure" in RCSD, which they attribute to the high concentration of poor and minority students within RCSD and the system of public education that gives students the right to attend school only in the district in which they live (*see,* Education Law § 3202; *see also, Brewer v West Irondequoit Cent. School Dist.,* 212 F3d 738, 746). They allege that, but for this resident-based system of public education, the demographics of RCSD would be different, the quality of education would be better and they would receive the "sound basic education" to which they are entitled. They contend that, by virtue of allegations of "wholesale academic failure" alone, they state a viable cause of action under the Education Article.[2] We disagree.

Contrary to plaintiffs' contention, academic failure as measured by performance on standardized tests does not, standing alone, establish a constitutional violation (*see, Campaign for Fiscal Equity v State of New York, supra,* at 317). There are myriad reasons for academic failure that are beyond the control of the State. It is only when that academic failure arises from the failure of the State to provide for the maintenance and support of the public school system that the Education Article

---

2. To the extent that plaintiffs contend that the State has failed to fulfill its constitutional obligations with respect to the provision of education in RCSD, they present a justiciable controversy (*see, Board of Educ. v Nyquist, supra,* at 39 n 4; *James v Board of Educ.,* 42 NY2d 357, 365).

is implicated (*see, Board of Educ. v Nyquist, supra,* at 47-48). As previously noted, the State's constitutional obligation is satisfied as long as "the physical facilities and pedagogical services and resources made available under the present system are adequate to provide children with the opportunity to obtain [a sound basic education]" (*Campaign for Fiscal Equity v State of New York, supra,* at 316). Because plaintiffs fail to allege that minimally acceptable educational services and facilities are not being provided in RCSD, they fail to state a cause of action under the Education Article (*see, Campaign for Fiscal Equity v State of New York, supra,* at 316).

Furthermore, the system of public education that plaintiffs challenge is the very system that was "constitutionalized" by the Education Article (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo, supra,* at 284). One of the hallmarks of that system is resident-based education. "Absent residence requirements, there can be little doubt that the proper planning and operation of the schools would suffer significantly" (*Martinez v Bynum,* 461 US 321, 329). Plaintiffs cannot assert a viable cause of action under the Education Article by attacking the very system that was constitutionalized by that article.

### III. 42 USC § 1983 Claim in the Fourth Cause of Action

■ Plaintiffs assert a civil rights claim (*see,* 42 USC § 1983) arising from the alleged violation of regulations promulgated by the United States Department of Education implementing title VI (34 CFR 100.3 [b] [2]). It is far from settled whether a Federal regulation may give rise to a Federal right enforceable under 42 USC § 1983 (*see, King v Town of Hempstead,* 161 F3d 112, 115). Additionally, regulations implementing title VI have been called into question by *Alexander v Sandoval* (532 US 275, *supra*). We need not address those issues, however, because plaintiffs fail to state a claim under 34 CFR 100.3 (b) (2).

Under the regulations of the United States Department of Education, programs "receiving Federal financial assistance from the Department of Education" (34 CFR 100.1) may not "utilize criteria or methods of administration which have the effect of subjecting individuals to discrimination because of their race, color, or national origin" (34 CFR 100.3 [b] [2]). That prohibition applies to determinations concerning "the types of services, financial aid, or other benefits, or facilities which will be provided under any such program, or the class of individuals to whom, or the situations in which, such services,

financial aid, other benefits, or facilities will be provided under any such program, or the class of individuals to be afforded an opportunity to participate in any such program" (34 CFR 100.3 [b] [2]). Plaintiffs contend that section 3 of chapter 446 of the Laws of 1973 (McKinney's Uncons Laws of NY § 6265 [5]) and Education Law § 3202 have a racially disparate impact on education and therefore violate 34 CFR 100.3 (b) (2).

We reject plaintiffs' contention that 34 CFR 100.3 (b) (2) applies to section 3 of chapter 446 of the Laws of 1973. Section 3 restricts the authority of the Urban Development Corporation to build low-cost housing in the suburbs without local approval. Thus, it is not a "criteri[on] or method[] of administration" used by the State with respect to the delivery of educational services (34 CFR 100.3[b] [2]).

We further reject plaintiffs' contention that Education Law § 3202 has a racially disparate impact in violation of 34 CFR 100.3 (b) (2). Education Law § 3202 establishes the framework for resident-based public education in this State. Even assuming, arguendo, that the provisions of Education Law § 3202 have a racially disparate impact, we conclude that they do not violate 34 CFR 100.3 (b) (2) if they are uniformly applied because the "State * * * has a substantial interest in imposing bona fide residence requirements to maintain the quality of local public schools" (*Martinez v Bynum, supra,* at 329-330). Because plaintiffs fail to allege that Education Law § 3202 is not being uniformly applied, they have failed to allege a viable claim under 34 CFR 100.3 (b) (2).

IV

Accordingly, we conclude that the order should be modified by granting the State's motion in its entirety and dismissing the remainder of the second and fourth causes of action against the State, thereby dismissing the second amended complaint against the State. In view of our determination, there is no need to consider whether the court erred in granting the motion of the individual school districts seeking dismissal of the second amended complaint against them.

GREEN, J. P. (dissenting in part). I respectfully dissent in part. I agree with the majority's conclusion that the second, third and fourth causes of action in the second amended complaint fail to meet the minimal standard necessary to withstand the dismissal motion of defendants State of New York, the Regents of the University of the State of New York and their

Chancellor, and the New York State Education Department and its Commissioner (collectively, State). I would also hold that the motions of the Rochester City School District (RCSD) and the other school district defendants to dismiss the second amended complaint against them were properly granted (*see, Paynter v State of New York*, 187 Misc 2d 227, 230-231). I do not agree with the majority, however, that plaintiffs fail to state a viable cause of action based upon the State's alleged violation of the Education Article of the State Constitution (NY Const, art XI, § 1). I would therefore modify the order by denying that part of the State's motion seeking dismissal of the first cause of action in the second amended complaint and reinstating that cause of action against the State.

In considering the sufficiency of the first cause of action, our task is to "determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d 83, 87-88). Plaintiffs' essential allegation is that students in RCSD are being denied the "sound basic education" mandated by the Education Article (*Board of Educ. v Nyquist*, 57 NY2d 27, 48, *appeal dismissed* 459 US 1139). Plaintiffs support that allegation with facts, based largely upon data collected, generated and published by the State, indicative of the failure of RCSD students to acquire the most basic academic skills. Plaintiffs have submitted evidence that, by virtually every measure of educational achievement, i.e., standardized test scores, dropout rates, retention rates, Regents examination results, Regents diploma award rates and college attendance rates, the performance of RCSD students is "dismal" (*Paynter v State of New York, supra,* at 233). While inadequate performance on any of those particular measures, standing alone, may not establish a violation of the Education Article (*see, Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 317), the wholesale academic failure alleged by plaintiffs at least implicates the State's failure to fulfill the mandate of that Article. What is made available to RCSD students may not "properly be said to constitute an education" (*Board of Educ. v Nyquist, supra,* at 48) and may indeed fall below the "constitutional floor with respect to educational adequacy" that has been unambiguously acknowledged by the Court of Appeals (*Campaign for Fiscal Equity v State of New York, supra,* at 315).

Plaintiffs do not attribute the wholesale academic failure in RCSD to deficiencies in funding or the absence of "minimally acceptable educational services and facilities" (*Campaign for*

*Fiscal Equity v State of New York, supra,* at 316). Rather, plaintiffs allege that the substandard performance of RCSD students is the inevitable result of the high concentration of poor and minority students. Plaintiffs provide factual support for that allegation with statistics that 90% of RCSD students are poor, as measured by their eligibility for the Federal free and reduced-price lunch program, and that 80% of RCSD students are African-American and Latino. Plaintiffs also supply scholarly and governmental studies and expert opinion evidence indicating that such concentrations of extreme poverty and racial isolation create virtually insurmountable obstacles to the ability of RCSD to educate its students. Thus, the barriers to educational achievement alleged by plaintiffs are not the result of insufficient State funding for public education or inadequate educational services and facilities, defined in terms of physical facilities, "instrumentalities of learning" and trained teachers (*Campaign for Fiscal Equity v State of New York, supra,* at 317).

The majority concludes that plaintiffs have failed to state a viable cause of action precisely because they do not attribute the wholesale academic failure in RCSD to the State's failure to provide such minimally adequate educational services and facilities. That conclusion, in my view, rests upon an overly narrow conception of the State's obligation under the Education Article "to offer all children the opportunity of a sound basic education" (*Campaign for Fiscal Equity v State of New York, supra,* at 316). Adequate educational facilities and services do not themselves constitute a sound basic education; rather, they are necessary conditions for the provision of a sound basic education. I cannot agree with the majority that the State satisfies its obligation to provide the opportunity for such an education if the buildings, desks, textbooks and staff are minimally adequate but students nevertheless lack "the basic literacy, calculating, and verbal skills necessary to enable children to eventually function productively as civic participants capable of voting and serving on a jury" (*Campaign for Fiscal Equity v State of New York, supra,* at 316).

In *Campaign for Fiscal Equity,* the plaintiffs alleged that the State system of public school funding deprived children in New York City of the opportunity for a sound basic education, and the Court of Appeals analyzed the plaintiffs' Education Article claim in terms of that allegation. The alleged cause of the violation, i.e., inadequate funding, is not identical to the violation itself, i.e.,deprivation of the opportunity for a sound basic

education. Here, plaintiffs allege that they are deprived of a sound basic education as the result of causes unrelated to funding. The alleged constitutional violation in both instances is the same, i.e., "the failure to provide the opportunity to obtain such fundamental skills as literacy and the ability to add, subtract and divide numbers," although the alleged causes are different (*Campaign for Fiscal Equity v State of New York, supra,* at 319). The Court of Appeals in *Campaign for Fiscal Equity* (*supra,* at 317) did "not attempt to definitively specify what the constitutional concept and mandate of a sound basic education entails" and instead concluded that "an exhaustive discussion and consideration of the meaning of a 'sound basic education' [was] premature" in light of the procedural posture of that case. This case is in the same procedural posture and it is equally premature to conclude that the State has met the constitutional mandate of providing RCSD students with the opportunity for a sound basic education.

Finally, plaintiffs allege that the State has both caused and failed to ameliorate the deprivation of educational opportunity resulting from the concentration of poverty and racial isolation in RCSD. Plaintiffs allege that the State is responsible in the first instance for drawing school district lines and enforcing residency requirements that reinforce and perpetuate such concentration and isolation and that the State is thus ultimately responsible for remedying the resulting denial of a sound basic education to RCSD students. Contrary to the majority, I do not believe that plaintiffs' allegation that the State has not met its constitutional obligation to the students in RCSD is necessarily a challenge designed to undermine the system of public education "constitutionalized" by the Education Article (*Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo,* 86 NY2d 279, 284). Nor do I find it necessary to consider the question of remedies, the discussion of which is premature at this stage of the litigation (*see, Campaign for Fiscal Equity v State of New York, supra,* at 316 n 4). All that is before us is the issue whether plaintiffs have pleaded a viable cause of action under the Education Article. In resolving that issue, we cannot overlook the fact that school districts are subdivisions of the State, created by the State to carry out its responsibilities (*see, City of New York v State of New York,* 86 NY2d 286, 289-290). "[T]he State Constitution reposes responsibility to provide a sound basic education with the State, and if the State's subdivisions act to impede the delivery of a sound basic education it is the State's responsibility under the Con-

stitution to remove such impediments" (*Campaign for Fiscal Equity v State of New York,* 187 Misc 2d 1, 80). Plaintiffs allege that the composition of RCSD impedes the delivery of a sound basic education to its students, and that allegation supports their Education Article cause of action.

In sum, plaintiffs have alleged and provided factual support for their allegations that RCSD students are denied the opportunity to obtain a sound basic education; that their educational deprivation is attributable to poverty concentration and racial isolation in RCSD; and that the State has created or contributed to those causal conditions. As the majority concludes, there may well be "myriad reasons for academic failure that are beyond the control of the State." That determination, however, is for the trier of fact, not for a court considering the sufficiency of a pleading subject to a motion to dismiss for failure to state a cause of action under CPLR 3211 (a) (7). Taking as true the allegations in the complaint, I conclude that plaintiffs sufficiently allege extreme educational deficiencies in RCSD and a causal link between those deficiencies and the action or inaction of the State. Those allegations, if proven, could support the conclusion that the State has not fulfilled its obligation to RCSD students under the Education Article. Accordingly, I conclude that the order should be modified by denying that part of the State's motion seeking dismissal of the first cause of action in the second amended complaint and reinstating that cause of action against the State.

HAYES, SCUDDER and KEHOE, JJ., concur with WISNER, J.; GREEN, J. P., dissents in part in a separate opinion.

Order modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by WISNER, J.