# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**699**

**CA 15-02049**

PRESENT: CENTRA, J.P., LINDLEY, CURRAN, TROUTMAN, AND SCUDDER, JJ.

---

UNIQUE BROWN, BY HER PARENT AND NATURAL
GUARDIAN DENISE STEVENS, FINA BELL, SIRMANUEL
BELL AND MARK BELL, BY THEIR PARENTS AND
NATURAL GUARDIANS RUSSELL AND TAMMY BELL,                    OPINION AND ORDER
SAMANTHA CRUZ, BY HER PARENT AND NATURAL
GUARDIAN MARIA DALMAU, GISELLE ALOMA JACOBS,
BY HER PARENT AND NATURAL GUARDIAN INGRID
JOHNSON-JACOBS, TISHAWN WALKER, BY HIS
GRANDMOTHER AND LEGAL GUARDIAN MICHELLE
EMANUEL, AND NORTHEAST CHARTER SCHOOLS
NETWORK, INC., PLAINTIFFS-RESPONDENTS,

V

STATE OF NEW YORK, DEFENDANT-APPELLANT,
ET AL., DEFENDANTS.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (ZAINAB A. CHAUDHRY OF
COUNSEL), FOR DEFENDANT-APPELLANT.

HERRICK, FEINSTEIN LLP, NEW YORK CITY (LEAH KELMAN OF COUNSEL), AND
CONNORS LLP, BUFFALO, FOR PLAINTIFFS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Erie County (Donna M. Siwek, J.), entered June 19, 2015. The order, insofar as appealed from, denied that part of defendants' motion seeking to dismiss the complaint against defendant State of New York.

It is hereby ORDERED that the order insofar as appealed from is unanimously reversed on the law without costs, the first cause of action is dismissed insofar as it is asserted by plaintiff Northeast Charter Schools Network, Inc., the complaint is dismissed insofar as plaintiffs seek injunctive relief, and judgment is granted in favor of defendant State of New York as follows:

> It is ADJUDGED and DECLARED that the charter school funding scheme of the State of New York has not been shown in this case to be unconstitutional.

Opinion by TROUTMAN, J.:

## I. Background

Plaintiffs are seven students who attend four nonparty charter

schools located in Buffalo and Rochester (hereafter, infant plaintiffs), and Northeast Charter Schools Network, Inc. (Network), an advocacy group of which those charter schools are members. In September 2014, plaintiffs commenced this action against, inter alia, the State of New York (defendant) challenging the validity of defendant's charter school funding scheme under the New York State Constitution. More particularly, plaintiffs allege that defendant's refusal to provide charter schools with facilities funding violates its obligation to provide the charter school students with a sound basic education under the Education Article (NY Const, art XI, § 1), and denies plaintiffs the equal protection of the laws under the Equal Protection Clause (art I, § 11).

According to the allegations set forth in the complaint, New York's charter schools receive approximately 60 to 80 cents for every dollar received by traditional public schools. A "major factor" contributing to the funding gap is that the Legislature does not provide charter schools with facilities funding, a particular category of funding generally made available only to traditional public schools. The lack of facilities funding, plaintiffs allege, forces charter schools to divert funds away from student instruction to cover construction, renovation, and other facilities costs. As a result, charter schools have "inadequate facilities, such as cafeterias with no kitchens, cramped classrooms with insufficient windows and lighting, and inadequate desk and seating space." They also lack "key resources, such as science labs, computer rooms, libraries, gymnasiums, art and music rooms, and theater space." Plaintiffs submit that such facilities are constitutionally inadequate, and present a barrier to the charter school students' right to a sound basic education. Plaintiffs nonetheless cite to test scores and graduation rates, which they allege "demonstrate that the charter schools are outperforming the district schools" in both Buffalo and Rochester. For example, a high school student at a traditional Buffalo public school has a 56% chance of graduating in four years; a high school student at a Buffalo charter school has an 83.6% chance of doing the same. For that reason, plaintiffs allege, parents increasingly choose to send their children to charter schools, which have inadequate facilities and instrumentalities of learning, to avoid poorly performing traditional public schools. Plaintiffs further allege that the impact of the funding gap disproportionately falls on racial and ethnic minority groups, which comprise over 90% of charter school students. The first cause of action asserts a claim under the Education Article; the second and third causes of action assert equal protection claims under disparate treatment and disparate impact theories, respectively. For relief, plaintiffs seek a declaration that defendant's failure to provide facilities funding to charter schools is unconstitutional and a judgment enjoining defendant from "withholding" facilities funding.

Defendant, along with other defendants, filed a pre-answer motion to dismiss the complaint on the grounds that, inter alia, the complaint fails to state a cause of action, the Network lacks capacity to bring the action, and plaintiffs lack standing under the Education Article. Supreme Court granted the motion only to the extent of

dismissing the complaint against the other defendants. We conclude that the Network lacks standing to sue under the Education Article and that the complaint fails to state a cause of action. Thus, the court erred insofar as it denied defendant's motion with respect to those grounds and the injunctive relief sought by plaintiffs. We note, in addition, that the court erred in failing to declare the rights of the parties (*see generally Hirsch v Lindor Realty Corp.*, 63 NY2d 878, 881; *Seneca Nation of Indians v State of New York*, 89 AD3d 1536, 1538, *lv denied* 18 NY3d 808).

## II.   Network's Legal Capacity to Sue

We address first defendant's contention that the Network lacks legal capacity to challenge the constitutionality of charter school funding legislation on behalf of its member charter schools because charter schools are political subdivisions of the State. We reject that contention. There is no dispute that the Network has the capacity to sue under the circumstances of this case if its member charter schools have such capacity (*see generally New York State Assn. of Small City Sch. Dists., Inc. v State of New York*, 42 AD3d 648, 649). It is also true that each charter school is "a political subdivision" (Education Law § 2853 [1] [c]; *see* L 2014, ch 56), and that "[t]he general rule of law is that a political subdivision of the State may not challenge the constitutionality of an act of the State Legislature restricting its governmental powers" (*Town of Black Brook v State of New York*, 41 NY2d 486, 488; *see City of New York v State of New York*, 86 NY2d 286, 291-292). Nevertheless, charter schools benefit from a broad exemption from all "state and local laws, rules, regulations or policies governing . . . political subdivisions . . . except as specifically provided in the school's charter or in [article 56 of the Education Law]" (§ 2854 [1] [b]). Here, defendant does not allege that the charters of any of the schools specifically prohibit them from challenging the constitutionality of legislative acts, nor that article 56 specifically prohibits the schools from doing so. We therefore conclude that the Network has the legal capacity to bring this constitutional challenge on behalf of its members.

## III.   Standing to Assert a Cause of Action Under the Education Article

### A.   Network's Standing

We agree with defendant, however, that the Network lacks standing to sue defendant under the Education Article. As with capacity, the Network has standing only if its member charter schools do (*see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211) and, here, we conclude that the member charter schools do not have standing. To establish standing, a member charter school would have to allege an injury or interest that falls within the zone of interests that the Education Article protects (*see Matter of Assn. for a Better Long Is., Inc. v New York State Dept. of Envtl. Conservation*, 23 NY3d 1, 6; *Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 773). The Education Article does not protect schools; it protects the "students['] . . . constitutional right to a 'sound basic education' " (*Paynter v State of New York*, 100 NY2d 434, 439, quoting

*Board of Educ., Levittown Union Free Sch. Dist. v Nyquist*, 57 NY2d 27,
48).  For that reason, the Network lacks standing to sue under the
Education Article on behalf of its member schools, and we therefore
dismiss the first cause of action insofar as it is asserted by the
Network.

## B.  Infant Plaintiffs' Standing

Defendant further contends that infant plaintiffs lack standing
to sue defendant under the Education Article because infant
plaintiffs' allegations are vague, conclusory, and fail to establish
injury in fact.  We note, however, that defendant's contention
erroneously "conflates standing with the merits of the case" (*Kosmider
v Garcia*, 111 AD3d 1134, 1135 [internal quotation marks omitted]).  We
therefore conclude that defendant has failed to meet its burden on its
motion of establishing as a matter of law that infant plaintiffs lack
standing (*see U.S. Bank N.A. v Guy*, 125 AD3d 845, 847).

## IV.   The Cause of Action Under the Education Article

Having determined that infant plaintiffs, at least, have standing
to assert a cause of action against defendant under the Education
Article, we now address the merits of that part of defendant's motion
dealing therewith.  The Education Article states:  "The legislature
shall provide for the maintenance and support of a system of free
common schools, wherein all the children of this state may be
educated" (NY Const, art XI, § 1).  Those words enshrined in the State
Constitution the traditional, centuries-old system of school districts
in which communities make decisions on funding and operating
publically-funded local schools (*see New York Civ. Liberties Union v
State of New York*, 4 NY3d 175, 181 *[NYCLU]; Paynter*, 100 NY2d at 442).
Its purpose was to constitutionalize the traditional public school
system, not to alter its substance (*see NYCLU*, 4 NY3d at 181; *Paytner*,
100 NY2d at 442).  If that system—"which is what is to be maintained
and supported"—offers students a "sound basic education," then "the
constitutional mandate is satisfied" (*Nyquist*, 57 NY2d at 48).

The traditional system of public schools carried out the State's
constitutional mandate for more than 100 years before the Legislature
authorized "a system of charter schools . . . that operate
independently of existing schools and school districts" (Education Law
§ 2850 [2]; *see New York Charter Schs. Assn., Inc. v DiNapoli*, 13 NY3d
120, 123).  Charter schools are not mandated by the State
Constitution, but are independent creations of the Legislature,
fashioned for noble purposes, such as to enhance learning among
students in general and at-risk youth in particular, to encourage
academic innovation, and to offer choices beyond those offered in the
traditional public schools (*see* § 2850 [2]).  Although charter schools
are deemed to be public schools under the auspices of the Board of
Regents (*see* §§ 2850 [2] [e]; 2853 [1] [c]), they are governed by an
independent, self-selecting board of trustees and are exempt from a
multitude of rules and regulations that are applicable to traditional
public schools (*see* §§ 2853 [1] [f]; 2854 [1] [b]).  For example,
charter schools are not obliged to educate "all the children" within

their respective districts (NY Const, art XI, § 1), but instead may place a cap on admission (*see* § 2854 [2] [b]).

New York's charter school law aims for both fiscal integrity and academic achievement.  Charter schools receive public monies paid directly from the local school districts on a per capita basis under a fixed formula (*see* Education Law § 2856 [1]).  To obtain approval for a charter, a prospective school must submit a detailed application showing that, given the funds available, the school will be able to achieve the student performance standards set by the Board of Regents (*see* § 2851 [2]), standards which the Court of Appeals has ruled exceed the constitutional floor (*see Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 315-316 [*CFE 1*]).  Once approved, each charter school periodically must apply to renew its charter, at which time it must demonstrate progress in achieving its educational objectives (*see* § 2851 [4] [a]).  Underachieving schools may be closed without violating the Education Article (*see generally Pinnacle Charter Sch. v Board of Regents of the Univ. of the State of N.Y.*, 108 AD3d 1024, 1027, *appeal dismissed* 21 NY3d 1029, *lv denied* 22 NY3d 951).

Given the foregoing constitutional and statutory scheme, we conclude that the Education Article cannot serve as a legal basis for challenging the constitutionality of charter school funding legislation.  The well-established analytical framework for an Education Article claim requires that a plaintiff plead deficient inputs, such as inadequate teaching, facilities, or instrumentalities of learning; deficient outputs, such as poor test results and graduation rates; and a causal connection between the deficient inputs and outputs (*see Paynter*, 100 NY2d at 440; *CFE 1*, 86 NY2d at 318).  More fundamentally, "because school districts, not individual schools, are the local units responsible for receiving and using state funding, and the State is responsible for providing sufficient funding to school districts, a claim under the Education Article requires that a district-wide failure be pleaded" (*NYCLU*, 4 NY3d at 182).

There is, in our view, no meaningful way to apply those requirements in the context of a charter school funding challenge.  In this particular action, the thrust of the complaint is that infant plaintiffs were forced into charter schools that suffer deficient *inputs*, in order to avoid traditional public schools that suffer deficient *outputs*.  They do not and cannot allege that the charter schools' allegedly deficient inputs cause the traditional public schools' allegedly deficient outputs.  Moreover, even assuming, arguendo, that plaintiffs have pleaded a district-wide failure in the Buffalo and Rochester city school districts, the provision of facilities funding to charter schools cannot be considered a proper remedy for such a deficiency.  To the contrary, to divert public education funds away from the traditional public schools and towards charter schools would benefit a select few at the expense of the "common schools, wherein all the children of this State may be educated" (NY Const, art XI, § 1).  We therefore conclude that plaintiffs' cause of action based on the Education Article fails as a matter of law.

### V. The Cause of Action for Denial of Equal Protection, Disparate Treatment

We likewise agree with defendant that the court erred in concluding that plaintiffs stated causes of action for the denial of "equal protection of the laws of this state" (NY Const, art I, § 11). In their second cause of action, plaintiffs assert a denial of equal protection based on a disparate treatment theory. Plaintiffs allege that Buffalo and Rochester public schools receive facilities funding while charter schools do not. In support of its motion to dismiss, defendant sets forth numerous rationales for the disparity in funding. For example, charter schools are exempt from costly regulations that apply only to traditional public schools, have the discretion to limit their enrollment, are nonunion, and have access to sources of funding that public schools do not. A further legislative rationale for the disparity in facilities funding is that charter schools are experimental and more likely to be transitory (see *J.D. ex rel. Scipio-Derrick v Davy*, 2 A3d 387, 395 [NJ Super Ct, App Div 2010]). Contrary to plaintiffs' assertion, charter schools do not receive precisely "zero dollars" for facilities. Plaintiffs concede, even in the allegations of their complaint, that charter schools receive public funds pursuant to the statutory scheme, and that some of those funds are spent on facilities costs. Thus, to the extent that the school funding scheme provides traditional public and charter schools with disparate levels of funding, we conclude that the scheme is supported by a rational basis (see *Reform Educ. Fin. Inequities Today [R.E.F.I.T.] v Cuomo*, 86 NY2d 279, 285). Furthermore, to the extent that this cause of action is based on the disparate levels of facilities funding between upstate and downstate charter schools, plaintiffs conceded at oral argument of this appeal that they do not seek to invalidate legislation that provides facilities funding to certain New York City-based charter schools. We therefore conclude that plaintiffs' second cause of action fails as a matter of law.

### VI. The Cause of Action for Denial of Equal Protection, Disparate Impact

In their third cause of action, plaintiffs set forth a cause of action for denial of equal protection based on a disparate impact theory. Plaintiffs allege that defendant's failure to provide charter schools with facilities funding impacts racial and ethnic minorities more severely. We agree with defendant that plaintiffs' acknowledged failure to plead discriminatory intent is fatal to their cause of action (see *CFE 1*, 86 NY2d at 320). We therefore conclude that plaintiffs' third cause of action fails as a matter of law.

### VII. Conclusion

Accordingly, we conclude that Network lacks standing to sue defendant under the Education Article and that the first cause of action should therefore be dismissed insofar as it is asserted by Network. We further conclude that the complaint fails to state a cause of action and that it should be dismissed insofar as plaintiffs seek injunctive relief. Finally, judgment should be granted to

defendant declaring that defendant's charter school funding scheme has not been shown in this case to be unconstitutional.