Rivera, J.
(concurring in part, dissenting in part). I agree for the reasons stated by the majority that the Aristy-Farer complaint should be dismissed in its entirety because it fails to plead a cognizable claim. However, because the complaint filed by the New Yorkers for Students’ Educational Rights (NYSER) adequately pleads several causes of actions against the State for violations of the Education Article as to all districts, I would affirm the Appellate Division as it relates to this action.[1]
I.
The State Constitution’s Education Article mandates that “[t]he legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated” (NY Const, art XI, § 1). This Court has interpreted that language to require “a Statewide system assuring minimal acceptable facilities and services in contrast to [an] unsystematized delivery of instruction” (Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 47 [1982]), and “that the opportunity for a sound basic education be provided to all” (New York Civ. Liberties Union v State of New York, 4 NY3d 175, 178 [2005] [NYCLU]). To the extent the State’s obligation involves financing public *519 education, the Court has not determined precisely how much money the State must spend to comply with its constitutional mandate because such a determination “presents issues of enormous practical and political complexity” best left to the other branches of government (Levittown, 57 NY2d at 38-39). However, the Court has maintained that “it is the province of the Judicial branch to define, and safeguard, rights provided by the New York State Constitution, and order redress for violation of them” (Campaign for Fiscal Equity v State of New York, 100 NY2d 893, 925 [2003] [CFE II]).
The Court’s decisions in the trilogy of Campaign for Fiscal Equity (CFE) cases explain the State’s financing obligations under the Education Article and the methods by which plaintiffs may bring claims challenging the constitutionality of state financing. These decisions further provide the context for the instant appeal. In the first CFE case, the Court held that a group of plaintiffs had pleaded a sustainable claim under the Education Article and a valid cause of action under federal law as provided by Civil Rights Act of 1964, title Vi’s implementing regulations (Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 312 [1995] [CFE I]). The Court concluded that there is a “constitutional floor with respect to educational adequacy” under the Education Article, and that the Court is “responsible for adjudicating the nature of [the State’s] duty” (id. at 315). That “constitutional floor,” “requires the State to offer all children the opportunity of a sound basic education” (id. at 316). CFE I established that a cause of action under the Education Article is properly stated where it alleges that “minimally acceptable educational services and facilities are not being provided in plaintiffs’ school districts” (id. at 316). The Court further explained that “[a] relevant issue at this point is whether plaintiffs can establish a correlation between funding and educational opportunity” (id. at 318). The plaintiffs prevailed at trial, but the Appellate Division reversed.
On appeal, this Court concluded that the State had deprived schoolchildren in New York City of a “sound basic education” (CFE II, 100 NY2d at 918-919). The Court upheld the trial court’s findings that the “inputs” (teaching, facilities, and instrumentalities of learning) were insufficient as reflected by the deficiencies in the “outputs” (test results and both graduation and dropout rates) (id. at 908). The Court held that “[r]eforms to the current system of financing school funding and managing schools should address the shortcomings of the *520 current system by ensuring, as a part of that process, that every school in New York City would have the resources necessary for providing the opportunity for a sound basic education” and “the new scheme should ensure a system of accountability to measure whether the reforms actually provide the opportunity for a sound basic education” (id. at 930). The urgency of the decision is reflected in the Court’s order granting the State 13 months to comply and develop the mandated reforms (id.).[2]
In accordance with the directives in CFE II, “Governor Pa-taki issued an executive order creating the New York State Commission on Education Reform, charged with recommending, to the Executive and the Legislature, education financing and other reforms” (Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 21-22 [2006] [CFE III]). The Commission calculated “sound basic education spending estimates for each school district” and compared that figure to the amount the State had actually spent, thereby determining “spending gaps” (id. at 23 [internal quotation marks omitted]). In New York City, the spending gap was $1.93 billion (id. at 24). Supreme Court convened a judicial referee panel to determine whether these reforms complied with CFE II (id. at 25). The panel modified the Commission’s findings, replacing some parts of its analysis, adopting others, and ultimately determining that the spending gap in New York City was $5.63 billion, not $1.93 billion as the State had found (id. at 25).
On appeal in CFE III, this Court held that “Supreme Court erred by, in effect, commissioning a de novo review of the compliance question” (id. at 27). The Court explained that the role of the courts is not “to determine the best way to calculate the cost of a sound basic education in New York City schools, but to determine whether the State’s proposed calculation of that cost is rational” (id.). The trial court “should have proceeded to determine whether the state plan . . . incorporated that sound basic education expenditure in its proposed budget and would, if enacted, ensure a system of accountability” (id. at 29-30). Holding that the “state budget plan had already reasonably calculated [the] cost [of a sound basic education],” the Court upheld the State’s plan and “declare [d] that *521 the constitutionally required funding for the New York City School District includes additional operating funds in the amount of $1.93 billion” (id. at 27, 31).
Here, the NYSER plaintiffs contend that the State has not complied with its constitutional obligation under the Education Article, as clarified by this Court in its CFE cases, to provide adequate funding to ensure a sound basic education to all of New York State’s public school children. Plaintiffs do not, as the majority argues, contend that “they should be able to prove a statewide violation by adducing evidence as to some districts of their choosing” (majority op at 512). The core of plaintiffs’ argument is that “hundreds of thousands of students in the City of New York and in other districts throughout the State of New York are currently being denied the opportunity for a sound basic education” as a result of the State’s failure to implement the legislative solutions it passed in response to the holdings in the CFE cases. This is concededly a novel theory because, first, it is based on the State’s duty to ascertain the “actual costs” of providing a sound basic education, and, second, because it alleges that the State’s failure has impacted students throughout the state, not just within one or more named districts. A fresh take on the complex and persistent problems of educational equity and public school underfinancing does not render the complaint deficient so long as the claims are adequately pleaded, as they are here.
II.
On a motion to dismiss, “our well-settled task is to determine whether, ‘accepting as true the factual averments of the complaint, plaintiff can succeed upon any reasonable view of the facts stated’ ” (CFE I, 86 NY2d at 318 [citations omitted]). Plaintiffs have the right “to seek redress, and not have the courthouse doors closed at the very inception of an action, where the pleading meets a minimal standard necessary to resist dismissal of a complaint” (Armstrong v Simon & Schuster, 85 NY2d 373, 379 [1995]). “Whether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss” (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). So long as, “on any reasonable view of the facts stated,” plaintiffs are entitled to relief, “our inquiry is complete and we must declare the complaint legally sufficient” (CFE I, 86 NY2d at 318).
“Fundamentally, an Education Article claim requires two elements: the deprivation of a sound basic education, and causes *522 attributable to the State” {NYCLU, 4 NY3d at 178-179). Such a claim “requires a clear articulation of the asserted failings of the State, sufficient for the State to know what it will be expected to do should the plaintiffs prevail” (id. at 180).
In my view, plaintiffs made this threshold showing. In the first cause of action, the NYSER plaintiffs allege that the “State defendants have failed to comply with the specific decisions and orders of the Court of Appeals in CFE I, CFE II, and CFE III” In the second cause of action, they allege that the “State defendants have failed to provide the individual plaintiffs and numerous other students in school districts throughout the State of New York the opportunity for a sound basic education.” In the third cause of action, plaintiffs allege, in part, that the State defendants have violated the Education Article by failing to “respond appropriately to changes in fiscal and educational conditions and to maintain a state system of education in which all of the students receive the opportunity for a sound basic education.” Lastly, the NYSER plaintiffs’ fourth cause of action alleges that the State has failed to provide students statewide with an opportunity for a sound basic education.
Plaintiffs support these causes of action with: (1) a detailed account of the State’s failure to implement the statewide plan it had adopted in response to the CFE cases; and (2) facts concerning the fiscal and educational deficiencies across school districts. Admittedly, the factual allegations for New York City and Syracuse are more robust than for the remaining districts. That plaintiffs here allege extra and more specific deficiencies in certain districts, however, does not preclude them from claiming that the State has failed to deliver a constitutionally adequate system statewide. Furthermore, plaintiffs still plead facts as to all school districts, which would entitle them to relief if true. In addition to the allegations specific to New York City and Syracuse, plaintiffs claim that because of extensive reduction in state aid to public schools, “school districts on average have reduced their instructional expenditures per pupil by approximately 7%.” Adequate “reserves” should be “5-10% of a school district’s spending levels,” but “in 2012-2013, 28 school districts had less than 1% of their budget available.” Further, the complaint alleges that “87 school districts in New York State are currently in conditions of financial stress” and “[e]ven with major efforts to eliminate inefficiencies and adopt cost-effective practices, high need school districts have been *523 unable to comply with many state mandates and provide their students the opportunity for a sound basic education at the current funding levels.”
Furthermore, these claims aside, it is enough that plaintiffs allege that, “[following the recession of 2008, the State failed to carry out its commitment to provide the amount of state aid that the governor and the legislature had determined to be necessary to provide all students the opportunity for a sound basic education.” The NYSER plaintiffs lay out a detailed history of the CFE litigation and the various legislative responses that the State has failed to implement. Affording the complaint every favorable inference, as we are obliged to do at this stage of the litigation, plaintiffs’ first, second, and fourth causes of action, and that part of the third challenging the adequacy of the accountability mechanisms, all sufficiently plead cognizable claims under the Education Article.
The majority’s characterization of plaintiffs’ claims as overly general and unspecified (majority op at 515, 516) is a consequence of the majority’s application of a heightened pleading standard, and not any flaw in the complaint. The majority states that the NYSER complaint asserts “financial — not educational — problems” (majority op at 515). Yet, the complaint alleges that students have been deprived of a sound basic education and outlines a number of “new mandates” meant to protect students’ education that are unaffordable under current funding levels. The majority further contends that the NYSER complaint does “not allege a causal relationship between the unspecified educational deficiencies and a lack of state funding, or identify any specific districts, such that the State might be put on notice as to the relief sought” (majority op at 515). However, the complaint expressly alleges that: (1) the State has failed to provide the state aid it committed in response to the CFE decisions; and (2) that “hundreds of thousands of students” have been denied the opportunity for a sound basic education because of the “extensive reductions in state aid to public schools.” The clear inference to be drawn from these allegations is that it is precisely these state financing failures that are responsible for the educational deficiencies alleged. As our cases make clear, at this stage of the litigation, plaintiffs are to be accorded “the benefit of every possible favorable inference” (Leon v Martinez, 84 NY2d 83, 87 [1994]) and whether they will succeed on the merits “is not part of the calculus” (EBC I, 5 NY3d at 19). We are concerned only with *524 whether plaintiffs may be afforded relief “on any reasonable view of the facts stated,” and if so, “we must declare the complaint legally sufficient” {CFE I, 86 NY2d at 318). The majority’s reading of the complaint is inconsistent with this well-established, minimal pleading requirement {Leon, 84 NY2d at 87). Furthermore, because the complaint states clearly the proposed remedy — fulfillment of the State’s obligation to: (1) ascertain the amount required to provide a sound basic education; (2) pass legislation consistent with that figure; and then (3) abide by it, as imposed by the CFE decisions — the State defendants are on notice as to the relief sought, contrary to the majority’s assertion.
Although the majority maintains otherwise (majority op at 510 n 5), its ruling essentially restricts school funding litigation to district-by-district challenges. The majority contends that, “[o]ur prior Education Article cases have clearly and consistently stated that the type of claims brought here must be pleaded with district specificity to be viable” (majority op at 509-510) and “[o]ur CFE decisions can be understood as a way to bring a challenge under the Education Article even if the State’s system overall is designed to provide a sound basic education, but such challenges must be brought on a school district level” (majority op at 511).
Our case law neither supports this narrow interpretation of school financing challenges, nor does it require that we adopt a pleading regime exclusively dependent on district-specific claims. In NYCLU, the Court held that the complaint failed to state a cause of action because plaintiffs’ “requested relief here bypasses the districts and instead seeks to mandate that the State provide money or other resources directly to individual schools” (4 NY3d at 182). Contrary to the majority’s suggestion, the Court’s holding in that case was therefore not premised on the fact that plaintiffs erroneously pleaded statewide failures, but instead on the fact that they erroneously pleaded individual-school failures. The Court’s holding in Reform Educ. Fin. Inequities Today (R.E.F.I.T.) v Cuomo (86 NY2d 279 [1995] [REFIT]) similarly does not shut the courthouse door to statewide claims. In that case, plaintiffs alleged an Education Article claim on the basis of a “disparity in the amount of money spent per pupil in property-poor as compared to property-rich school districts” (86 NY2d at 283). Having already held that “[t]he Education Article does not by its express terms contain an egalitarian component,” the Court was bound *525 to conclude that the complaint failed to state a cause of action (id. at 284). Furthermore, the CFE cases, as with NYCLU and REFIT, “addressed the sufficiency of the pleadings then before us and had no occasion to delineate the contours of all possible Education Article claims” (Paynter v State of New York, 100 NY2d 434, 441 [2003]). Those cases were limited to their facts and do not expressly prohibit plaintiffs here from bringing claims grounded in violations having a statewide impact. Nor do they provide a basis to limit the way plaintiffs articulate post-CFE school financing claims.
Furthermore, there is no judicial precedent for the majority’s suggestion that the State defendants would only be bound by the CFE decisions if there had been some injunctive relief ordered in those cases (majority op at 512-513). This argument is neither relied on by the State nor discussed by the courts below. For good reason — the argument has no application in this appeal. As the Court has explained, “it is the province of the Judicial branch to define, and safeguard, rights provided by the New York State Constitution” (CFE II, 100 NY2d at 925). When the Court makes such a constitutional determination, the State is bound by it, injunction or not.[3] It bears repeating that a plaintiff may — as with any party alleging injury— rely on our explications of the State’s constitutional obligation under the Education Article when asserting a subsequent violation of the law.
III.
School financing cases are difficult, complex, and require expansive resources (see Michael Heise, Equal Educational Opportunity Hollow Victories, and the Demise of School Finance Equity Theory: An Empirical Perspective and Alternative Explanation, 32 Ga L Rev 543, 580 [1998] [“the legal operationalization of (school finance) equity, at least at the public level involving school resources, has proven notoriously complex and difficult”]). The CFE litigation illustrates the challenges inherent in these cases. Beginning in 1995, the CFE cases were litigated for over a decade, with the last of the CFE cases being decided in 2006. The actions involved numerous appeals and remands, and it was not until a year after the final case was *526 litigated that the State developed its legislative response. In the interim, generations of children were denied the education guaranteed by our State Constitution. Against the tide of this Court’s prior decisions, the majority’s holding makes it all but impossible to address constitutional violations other than through burdensome piecemeal litigation. The result will be that meritorious claims will go unfiled, due in part to a lack of litigation resources and the inability of parents and children to wait decades for a possible victory from which they will never benefit directly. Yet, the stakes are high. At issue in these cases is the constitutional guarantee to every child in public school that the education funded by the State provides them with the basic skills they need to participate meaningfully in society. Education is unique because of its importance “in maintaining our basic institutions, and the lasting impact of its deprivation on the life of the child” (Plyler v Doe, 457 US 202, 221 [1982]). Education is the great leveler of social and economic inequalities, and “[i]n America, education is still the great equalizer” (Arne Duncan, US Secretary of Education, 2011).
The Court is “responsible for adjudicating the nature” of the State’s constitutional obligations (CFE I, 86 NY2d at 315). When the Court held in CFE II that the State was required to “ascertain the actual cost of providing a sound basic education” (100 NY2d at 930), that mandate was not limited to the Budget and Reform Act of 2007 — it was a constitutional requirement that survives the CFE litigation. The State was not free to attempt compliance and then abandon those efforts. It is for the legislature to determine how to comply with CFE, but compliance is undeniably required. Insofar as the NYSER complaint makes specific factual allegations that the State has failed to comply with the Court’s decisions in the CFE cases, and as a result students have not received a sound basic education, the claims meet the “minimal standard necessary” to survive the State’s motion to dismiss (Armstrong, 85 NY2d at 379).
Chief Judge DiFiore and Judges Stein, Fahey and Garcia concur; Judge Rivera concurs in part and dissents in part in an opinion; Judge Feinman taking no part.
Order, insofar as appealed from, modified in accordance with the opinion herein, without costs, and, as so modified, affirmed and certified question answered in the negative.

. The Appellate Division dismissed the third cause of action except to the extent that it challenges the adequacy of the State’s accountability mechanisms (143 AD3d 101, 118 [1st Dept 2016]). The majority allows the remainder of the third cause of action to proceed as to New York City and Syracuse because the State does not appeal that part of the Appellate Division’s order (majority op at 514). For the reasons I discuss, I would also allow this claim to proceed, but with respect to all school districts in the state.

. Pursuant to the Court’s order, the State could, and did, adopt a statewide measure to ensure compliance with its constitutional obligations under the Education Article to provide a sound basic education to every public school student in the state.

. The State’s abandonment of its efforts to comply with the CFE cases is therefore not solely potential evidence for a future case, as the majority contends (majority op at 514 n 6), but is itself a cause of action because it represents a constitutional violation.