# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision
before publication in the New York Reports.

No. 81
34-06 73, LLC, et al.,
      Respondents,
   v.
Seneca Insurance Company,
      Appellant.

Christopher R. Carroll, for appellant.
Dennis T. D'Antonio, for respondents.

RIVERA, J.:

The question on this appeal is whether plaintiffs' original complaint provides defendant with "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved" in support of plaintiffs' reformation claim, as required under CPLR 203 (f). At trial on this breach of contract action, plaintiffs sought to amend their complaint to include this otherwise untimely reformation claim based on mutual mistake

- 1 -

and a preexisting oral agreement. We conclude that plaintiffs' initial pleading alleging that defendant breached the parties' written insurance policy and that plaintiffs complied fully with all requirements contained therein fails to give defendant the requisite notice.

I.

Defendant Seneca Insurance Company issued plaintiffs 34-06 73, LLC, Bud Media, LLC, and Coors Media, LLC a multi-million dollar, written insurance policy covering several of plaintiffs' vacant commercial properties. The parties do not dispute the contents of the policy, only whether plaintiffs' complaint asserting breach of contract and seeking damages put defendant on notice of the transactions or occurrences underlying plaintiffs' belated reformation claim.

As relevant to this appeal, the policy includes a Protective Safeguards Endorsement ("PSE") that required plaintiffs, among other things, to maintain an automatic sprinkler device on the subject property. At the top of the page, the PSE states: "THIS ENDORSEMENT CHANGES THE POLICY" and advises to "READ IT CAREFULLY." It further states that the PSE modifies the commercial property coverage of the policy so that defendant would "not pay for loss or damage caused by or resulting from fire if, prior to the fire, the policyholder . . . [k]new of any suspension or impairment in any protective safeguard . . . and failed to notify" defendant or otherwise "[f]ailed to maintain any protective safeguard . . . in complete working order."

Approximately one month after the policy went into effect, defendant's agent conducted an inspection of the premises and issued a report to plaintiffs' principal and sole

owner, Mohammad Malik, advising him that there was no compliant sprinkler system on the premises and recommending that plaintiffs notify defendant of the system's non-operability. A little more than four months later, there was a fire on the premises and plaintiffs requested payment under the policy for damages incurred. Defendant notified plaintiffs that it was denying the claim under the PSE because plaintiffs did not maintain a working sprinkler system.

Plaintiffs thereafter commenced this action against defendant for breach of contract, seeking over $2.4 million in damages based on defendant's failure to cover the fire loss. The complaint made the following factual assertions: (1) defendant issued an insurance policy "bearing number FTZ 1000661" that provides property damage insurance on the covered property; (2) the fire on the premises "was a peril insured against under the Policy" which occurred "while the Policy was in full force and effect"; (3) plaintiffs complied "with all of the conditions precedent and subsequent pursuant to the terms of the subject policy"; and (4) defendant failed to indemnify plaintiffs for the property damage. In its answer, defendant admitted that it issued the referenced policy and had not made payment thereunder. Defendant raised several affirmative defenses, including one based on the PSE, asserting that, because plaintiffs failed to maintain the sprinkler system as required by the policy, they were not covered for the fire damage.

Following discovery, plaintiffs moved to dismiss the affirmative defense pursuant to CPLR 3211, arguing that defendant was aware that there was no functioning sprinkler system—as specifically noted in the inspection report to Malik—and thus waived its right

to disclaim coverage based on the PSE because it neither followed up to confirm whether an operational system was installed nor cancelled the policy. Defendant cross-moved for summary judgment on its PSE-based affirmative defense. Supreme Court denied the motions, concluding there were triable issues of fact as to waiver and there was conflicting evidence as to whether the sprinkler system was operational at the time of the fire.

At trial, for the first time, plaintiffs argued that the written policy did not reflect the parties' agreement. Malik testified that he told his insurance broker that he did not want the policy to include a protective safeguard endorsement because the properties were vacant buildings or lots, and most did not have sprinklers. However, he admitted that he did not read the insurance policy. Defendant's Vice President of Underwriting, Carol Muller, testified that an underwriting file disclosed during discovery did not contain documents referencing the PSE or the sprinkler system, that the premiums quoted for the Policy were for a non-sprinklered building, and that the inclusion of the PSE may have been a mistake.[1]

After plaintiffs rested, they orally moved to amend the complaint to conform the pleadings to the proof by adding a claim for reformation. The court reserved decision on the motion. At the charge conference, defendant opposed the proposed amendment,

---

[1] The next day, the court denied defendant's attempt to admit the routing sheet that Muller testified she did not see in the file, which, according to defendant, would have conclusively established defendant's intent to include the PSE in the policy. Defendant further argued that whether the PSE was part of the policy did not arise until trial, prejudicing defendant. The court rejected this argument on the ground that the issue of the PSE's inclusion bore on the issues of waiver and estoppel.

arguing that the reformation claim was time-barred and futile. The court granted plaintiffs'

motion, concluding that the claim related back to the complaint because it was "part of the

whole thrust of the complaint originally" and the jury should decide whether the PSE's

inclusion resulted from a mutual mistake. Hence, in addition to charging the jury on the

question of whether plaintiffs maintained a sprinkler system as required by the policy, the

court also charged the jury on reformation, waiver, and estoppel.

Although the jury rejected plaintiffs' waiver and estoppel arguments and found that

plaintiffs did not prove due diligence in maintaining an automatic sprinkler system on the

premises at the time of the fire, the jury returned a verdict in favor of plaintiffs on the

reformation claim, finding that plaintiffs established by clear and convincing evidence that

the parties' true agreement was a policy without a PSE and it was a mutual mistake to

include the PSE in the policy.

Defendant moved to set aside the reformation portion of the verdict pursuant to

CPLR 4404 (a) and for judgment in defendant's favor on the grounds that the reformation

claim was untimely and, although plaintiffs did not formally move to amend pursuant to

CPLR 3025, the claim did not relate back to the original complaint. Defendant maintained

that the complaint alleged only nonperformance and contained no indication that the

contract failed to reflect the parties' intent. Defendant also asserted surprise and prejudice

because, had plaintiffs questioned the contract's terms earlier, defendant would have

deposed plaintiffs' insurance broker and the underwriter (before the underwriter became

unavailable years into the litigation). The court denied the motion, reasoning that plaintiffs

had relied on the same trial evidence to support the breach of contract and reformation claims, and that "reformation was a variation on the theory of breach of contract." The court also noted that defendant failed to turn over the underwriting file until nearly five years after the complaint was filed and thus had no grounds to complain.

The Appellate Division affirmed the judgment in the plaintiffs' favor, holding that the court providently granted plaintiffs' application to conform the pleadings to the trial evidence to assert a claim for reformation (190 AD3d 628, 629 [1st Dept 2021] (citing CPLR 3025 [c]). The Court concluded that the reformation claim was not barred by the statute of limitations because it related back to the complaint and the waiver and estoppel claims (*id.*). The Court also concluded that the PSE was "at the heart of the litigation from the outset and the same evidence" supporting plaintiffs' waiver argument supported reformation (*id.*). The Court further concluded that defendant was not prejudiced since it had the underwriting file in its possession and failed to timely produce it (*id.* at 630). We granted defendant leave to appeal (37 NY3d 915 [2021]), and now reverse.

II.

"Applications to amend pleadings [pursuant to CPLR 3025] are within the sound discretion of the court," and exercise of such discretion "may be upset by us only for abuse as a matter of law" (*Kimso Apartments, LLC v Gandhi*, 24 NY3d 403, 411 [2014] [alterations omitted]). However, there is no sound basis in law to grant amendment pursuant to CPLR 3025 (c) to add an untimely claim. Here, it is undisputed that when plaintiffs sought to amend their complaint the statute of limitations on the reformation

claim had expired and was therefore time-barred unless it related back to the original pleading. Section 203 (f) of the CPLR provides that "[a] claim asserted in an amended pleading is deemed to have been interposed at the time the claims in the original pleading were interposed, unless the *original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading*" (emphasis added). Thus, plaintiffs' reformation claim relates back to the original complaint—and is thus not barred by the statute of limitations—only if the complaint placed defendant on "notice of the transactions, occurrences, or series of transactions or occurrences, to be proved" in support of that claim.

As a threshold matter, Supreme Court and the Appellate Division should not have looked beyond the four corners of the original pleading to determine whether defendant was on notice of transactions or occurrences underlying plaintiffs' reformation claim. Section 203 (f) requires the court to determine solely whether a plaintiff's or a defendant's original pleading gives notice of the transactions or occurrences underlying the proposed amendment (*see* CPLR 203 [f]). Whether the same trial evidence supports both the breach of contract and reformation claims or whether defendant here failed to produce the underwriting file in a timely fashion are irrelevant to the notice issue. Similarly, matters unearthed during discovery have no bearing on whether an untimely claim relates back under section 203 (f). Of course, discovery might alert the moving party that it could or must amend the complaint or answer to protect its litigation position or prevent extinguishment of a claim as time-barred, but such discovery does not shed light on

whether the original pleading provides notice of transactions or occurrences to be proved in support of a new claim for recovery. While some of these observations might be relevant to consideration of prejudice under CPLR 3025, they do not inform the analysis under CPLR 203(f).

The "notice" required by CPLR 203 (f) is notice of "transactions, occurrences or series of transactions or occurrences," concordant with the CPLR's objective of "liberalizing the strict, formalistic pleading requirements of the [nineteenth] century" (*Buran v Coupal*, 87 NY2d 173, 177 [1995], citing *Shaw v Cock*, 78 NY 194 [1879], and *Harriss v Tams*, 258 NY 229 [1932]). Under our well-established liberal pleading standards, we assume all facts asserted in the complaint to be true and draw all reasonable inferences from those assertions (*see Sassi v Mobile Life Support Servs., Inc.*, 37 NY3d 236, 239 [2021]; *accord Chanko v American Broadcasting Cos. Inc.*, 27 NY3d 46, 52 [2016]; *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 318 [1995]; *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Also well-established is our treatment of an insurance policy as a contract, "subject to principles of contract interpretation" (*Matter of Covert*, 97 NY2d 68, 76 [2001]). To plead reformation, a plaintiff must allege sufficient facts supporting a claim of mutual mistake, meaning that "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (*Chimart Assoc. v Paul*, 66 NY2d 570, 573 [1986]). Given the "heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the

parties, . . . [t]he proponent of reformation must show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties" (*id.* at 574 [cleaned up]).

In contrast, to plead a cause of action for breach of contract, a plaintiff usually must allege that: (1) a contract exists (*see e.g. Mandarin Trading Ltd. v Wildenstein*, 16 NY3d 173, 181-182 [2011]); (2) plaintiff performed in accordance with the contract (*see e.g. Pope v Terre Haute Car & Mfg. Co.*, 107 NY 61, 65-66 [1887]); (3) defendant breached its contractual obligations (*see Barker v Time Warner Cable, Inc.*, 83 AD3d 750, 751 [2d Dept 2011] ["In order to state a cause of action to recover damages for a breach of contract, the plaintiff's allegations must identify the provisions of the contract that were breached"]; and (4) defendant's breach resulted in damages (*see Biotronik A.G. v Conor Medsystems Ireland, Ltd.*, 22 NY3d 799, 805-806 [2014] [compensatory damages]; *Kronos, Inc. v AVX Corp.*, 81 NY2d 90, 95 [1993] [nominal damages]; *Milan Music, Inc. v Emmel Communications Booking, Inc.*, 37 AD3d 206, 206 [1st Dept 2007]).

## III.

With those principles in mind, we turn to plaintiffs' complaint and conclude that it failed to give notice to defendant of the transactions or occurrences on which plaintiffs base their reformation claim. In their original complaint, plaintiffs reference a specific written policy which they identified as the parties' agreement and which they allege defendant breached. The complaint further alleges that plaintiffs complied "with all of the conditions precedent and subsequent pursuant to the terms of the subject policy." This latter allegation

is fatal to plaintiffs' assertion that the complaint provides notice of the transactions or occurrences to be proved in support of a reformation claim. In fact, if anything, it suggests the opposite because, by asserting total compliance, plaintiffs necessarily disclaimed any challenge to the policy's terms, specifically the PSE.

Moreover, plaintiffs based their allegation that the parties included the PSE by "mistake" on assertions at trial that Malik instructed his broker to exclude the sprinkler requirement before the parties finalized the written policy, and the lack of documentation for a PSE in the underwriting file. Therefore, the reformation claim, as advanced by plaintiffs, was based on a purported oral agreement negotiated by Malik with the broker that preceded the contract's formation, whereas the breach of contract claim in the original complaint was based on the written policy which includes the PSE and with which plaintiffs alleged full compliance. Critically, nothing in the stand-alone breach of contract claim put defendant on notice that there was a prior oral agreement that excluded the PSE and that the PSE's inclusion in the written policy was a mistake. Simply put, "the transactions or occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading" did not give notice of reformation because they are factually distinct and discordant from plaintiffs' allegation of a breach of the written policy (CPLR 203 [f]). In light of our "heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties" (*Chimart*, 66 NY2d

at 573), defendant had every reason to rely on the original complaint, which provided no indication that the written policy failed to reflect the parties' intent.[2]

To be clear, the transactions and occurrences underlying a breach of contract claim do not perforce give notice of the transactions or occurrences underlying a claim of reformation based on mutual mistake, and vice versa. However, consistent with our liberal pleading standards, an original pleading alleging that a party failed to perform in accordance with the written agreement might supply sufficient notice of the transactions or occurrences to be proved in support of reformation. That is not the case here, where plaintiffs' complaint foreclosed a factual or inferential basis for such notice by unqualifiedly alleging that they "complied with *all* of the conditions precedent and subsequent pursuant to the terms of the subject policy," which the complaint referenced explicitly as the written policy. The complaint contained no alternate theory of recovery or factual allegations based on pre-formation transactions or occurrences. The complaint therefore put defendant on notice of transactions or occurrences related solely to the written policy and plaintiffs' total compliance with that agreement's terms, which include the PSE's sprinkler requirement.

---

[2] Defendant's reliance on *Matter of SCM Corp. (Fisher Park Lane Co.)* (40 NY2d 788 [1976]) is not availing. In *SCM* the Court analyzed the applicability of CPLR 203 (d) to a time-barred counterclaim. Section 203 (d) states, in relevant part, that an untimely "defense or counterclaim is not barred . . . if . . . [it] *arose from* the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends" (CPLR 203 [d] [emphasis added]). In contrast, section 203 (f) requires "notice" of the transactions or occurrences, a different standard than section 203 (d)'s "arose from" threshold for defenses and counterclaims.

Plaintiffs are on especially weak ground to the extent they assert they could not have pled a claim for reformation when they filed the complaint. Malik, the principal and sole owner of the premises, testified at trial that he did not want a sprinkler requirement in the policy and made this intent clear to the insurance broker.[3] However, "the language of the agreement was plain and unambiguous" (*Chimart*, 66 NY2d at 574), that the PSE changed the policy to add a ground for disclaimer based on the lack of an automatic sprinkler system. Plaintiffs cannot now claim ignorance of the sprinkler requirement's clear terms based on Malik's assertion at trial that he informed his broker of his preference for a non-sprinkler policy and when, despite this term's purported importance, he ignored the advisements and chose not to read the written policy.

For the reasons we discuss, the reformation claim cannot relate back to plaintiffs' original pleading. Supreme Court therefore abused its discretion as a matter of law when it granted plaintiffs' motion to amend to include this time-barred claim (*see Kimso Apartments, LLC*, 24 NY3d at 411).

---

[3] Malik testified that he received defendant's April 2011 disclaimer letter, which quoted the PSE and disclaimed coverage due to plaintiffs' failure to comply with the sprinkler requirement, which further confirms plaintiffs' awareness of the PSE before they filed the complaint in September 2011. Malik also gave a sworn statement in February 2015 that defendant had hired inspectors for the sprinkler system pursuant to the PSE. Therefore, plaintiffs could have moved to amend before the limitations period expired on April 1, 2015 (*see Matter of Wallace v 600 Partners Co.*, 86 NY2d 543, 547 [1995] [holding that "an action based on mistake" must be commenced within six years from the date the mistake occurred]; *cf. McNeven v Livingston*, 17 Johns 437, 437 [NY 1819] ["Where a party intends to abandon or rescind a contract, on the ground of a violation of it by the other, [they] must do so promptly and decidedly, on the first information of such breach"]).

Accordingly, the order of the Appellate Division should be reversed, with costs, plaintiffs' motion to amend the complaint to include a reformation cause of action denied, and the case remitted to Supreme Court for entry of a judgment in accordance with this opinion.

Order reversed, with costs, plaintiffs' motion to amend the complaint to include a reformation cause of action denied, and case remitted to Supreme Court, New York County, for entry of judgment in accordance with the opinion herein. Opinion by Judge Rivera. Acting Chief Judge Cannataro and Judges Garcia, Wilson, Singas and Troutman concur.

Decided October 27, 2022